Good morning, Vince Branco, Federal Defenders, on behalf of Mr. Balderamas. California Penal Code 2-220 is not categorically a crime of violence because it can be based on the least touching with the intent to commit a sex offense that does not involve force above that inherent in any penetration. Could I ask you something? Let's assume for the moment, although you can get back to it if it's true. I read the sentencing minutes here. This issue did not arise at all at sentencing. I read your memo objecting to the presentence report. About 27 pages, maybe a half a page, was devoted to only part of the argument that you make here. But my reading of the sentencing minutes suggests that this 16 levels had no impact on the judge's sentence. Nobody talked about it. The sentence he imposed was 54 months. The defense lawyer actually suggested 48 would be reasonable. Just in his own defense, he said, originally he said 24, and then the judge said, no, no, no, he came in illegally the last time, and I'm not going backwards from the 30 months he got the last time. And my whole concern here is not to punish him for the sex crime, but to make sure that he doesn't do it again. And so the defense lawyer then says, well, I think then that 48 would be reasonable, and he gives him 54 months. And my whole reading of this transcript suggests to me particularly nobody talks about the 16 level upward adjustment, except the judge near the end when he's required to, as he is required to do, is to calculate the guidelines. Nobody talks about it. Everybody understands that what this judge is doing here is giving a sentence outside the guideline range. And it strikes me that this whole argument that you're making is essentially, it's really harmless error. Well, it's not. It's harmless error in the sense that he calculated, if you're right about the law, he calculated, he added 16 levels to the calculation of the guidelines, but then proceeded to pay, in my mind, no attention to the guidelines, and simply gave a sentence that he thought was reasonable, and it's possible from the last words that he said that maybe he took into account the nature of the offense. But that's perfectly okay. You don't need all these special documents to take into account the nature of the prior offense. And the final irony of all this is that the defense lawyer offered, I believe it's the police report,  they were mitigating facts. So I don't quite understand what this is all about. I have several answers. Go ahead. But the first initial answer is under the decision of U.S. v. Partick in this circuit, if there's a misapplication of the guidelines, we're entitled to a remand. Even if the judge, even if you could conclude by reading the transcript that the guidelines didn't have any substantial and injurious effect on the sentence? Well, I don't think that's actually true. I mean, the guideline calculations were there, and that was one factor to consider. I mean, remember, the government was asking for a starting point of, I believe, 78 months, and that was their starting point, and the judge was going down from that and recognizing that it was moving down from a guideline sentence, and then he was trying to pick out, well, what's appropriate. So if that starting point is lower by law, then you have to be careful. He just said he wasn't going to give it. He said, I'm not going to punish him for the sex crime. Those were, I think, close to his exact words. Well, I mean, there's a lot in that sentencing transcript. But the case law in the High Circuit, well, I mean, for one thing, the government hasn't argued harmless error, so they have waived that. Two, Carkey does say if there's a misapplication of the guidelines, if the starting point that the judge used, and it was a starting point in the sentencing transcript, he's talking about this, I believe it's a 70-something range, the probation officer. It really wasn't the starting point. I don't want to argue about this, but it comes up really at the end as he's about the sentence. He says, well, okay, I have to calculate the guidelines. Well, I believe he mentions that he is going to consider the aggravated felony in the beginning of the transcript, too. So it is there at the beginning. And during the discussion, there's a whole discussion about what the government's recommendation, what the probation officer's recommendation, and that's based on the guidelines. And then there was your recommendation. I don't know if you represented us. And your recommendation is 48 months. He gives 54. And maybe from the last words he said, he took into account that it was the nature of the crime, the underlying felony. But he could do that anyway in a non-guideline sentence. We don't have to quibble about the documents that he relied on. This is the last question. I don't know. I don't want to get into it. Gold, Carkey, they both, Kimbrough, they say if there's a misapplication of the guidelines, that that's procedural unreasonableness of the sentence. And we go back. Let me ask you. Come on. If you say the guidelines, if he miscalculates the guidelines, and he says it's 70 months but I'm giving him no time, that somehow or I'm giving him a month, that somehow we would have to reverse? I don't think if we got a month's sentence we would have appealed. No, no. But I'm just testing your argument. I mean, that's basically what you're saying, that somehow just because there might have been a miscalculation of the guidelines, even if it had no impact on the sentencing, we have to reverse. That can't be right, is it? Well, you can't say that it has no impact on the sentence when the government and the probation officer are encouraging the district court to impose the guidelines on this. And, yes, it's a different starting point. Maybe because the judge sees that the guideline range is in the 70 higher level, but if the guideline range was lower into the, I mean, this is the difference between a 16 and a plus 8, that he would have seen, well, maybe doubling the sentence that he got before is too much. Meaning, if now the judge is imposing a higher guideline sentence than what the guidelines actually call for, he would take that in consideration and go, wait a minute, maybe I'm wrong about this deterrent effective. I need to give him more time than the 30 months he got before. Maybe the 48 is more reasonable, and maybe even the 24 is reasonable. To say that the judge was only concerned, absolutely disregarded the guideline calculation, I think is unfair in this case. All right. Let me ask you another question that goes more to the merits of your argument. One of the documents that was considered here was, I guess it was a sheriff's, was it a sheriff's police officer's narrative of what happened with respect to the predicate. It's true that that probably could not be relied on if it were offered by the government to fix the upward adjustment. But the defendant's lawyer offered it. And as far as I could see, you don't say in your brief, and if I missed it you could correct me, that it was somehow error to consider that particular document, precisely I assume because you or whoever represented the defendant below offered it to try and show the judge that even though, to use the words of defense counsel, this may have been a crime of violence, they were mitigating facts. Those were almost the exact words that defense counsel used. So when you submit the document to the district court, even if it might otherwise have not been appropriate for him to consider it as one of the sacred documents to get to the 60-level upward adjustment, why couldn't he have considered it? I don't think you can consider it in the Taylor analysis regardless of who submitted it. And critically, he did not admit that all the facts in that report were true. He offered it to show that there was a mitigating way that this could have been committed, which does support a nonviolent way to commit the offense, meaning if it was just he went into the house and the judge found, because this was a West plea, a NOLO plea, that it was just a touching when the woman woke up, that is a nonviolent way to commit the offense. I understand that there is evidence of an assault. He submitted it. These were his exact words when he submitted it. He says, Judge, in some ways it was a violent offense. Nevertheless, it's not without mitigating factors. And so essentially you have virtually an admission by defense counsel that it was a violent offense, and the judge is not permitted to take that document into account. And again, in your brief, if I read it correctly, when you say he couldn't take one document into account, he couldn't take another, you don't refer to this particular police narrative as one of the documents he couldn't take into account, and I don't know how you could because you were the one who submitted it to him. Well, again, I think there are waiver problems in this case because the government has not relied on the modified categorical analysis. The government is just as much bound by waiver as a defendant, and they are arguing that this categorically is not a crime of violence and in no way relying on the modified categorical approach. That may save some time for rebuttal. Sorry that there is none of that left. Mr. Miller? Yes, please, of course. Bolanos is dispositive in this case because California Penal Code 220 is categorically a crime of violence. It is hard to imagine how one may attempt an unlawful attempt coupled with a present ability to commit a violent injury on the person of another in a nonviolent manner. Well, the argument that Mr. Bonner makes is that there are at least a couple of California cases decided under the statute in which there was no force, and that shows that it's categorically over broad. That is, you can be convicted under the statute of an assault with intent to commit rape, whatever else is in the statute. Without use of force. Yes, but Bolanos says you do not need to use the force of five. It did not conduct an examination of California case law. Well, it did on some portions where... Not on this. How do you get around the two cases? Well, for instance, the... And then not merely fingering the labia, are those the two cases that you're talking about? Well, they're two unpublished decisions in California. Yes. And one of which, it's perfectly clear that no force was used. Is your position that those are outliers, we don't have to worry about it? Or is your position that they're not under... They somehow don't trump Balaamis? I mean, what's the answer? The answer is that some... I am not familiar with which California cases... Well, they're in his brief. Yes, I understand that. But there is one... There was a reference to that you can commit 220 by having, you know, raping an unconscious body. Well, if you're not familiar with the California cases that Judge Reimer referred to, how about Lopez Montanez and Beltran Muguia, which are two of our cases, that say the same thing? What's your response to that? Well, those do not address the assault with the intent to commit the sex crimes. And in Balaamis, it is the rape that makes it a sex crime, and it is the assault that makes it the forcible sex crime. And that they recognized in Balaamis that the use of force doesn't have to be a violent use of force. It's some other force beyond the act of penetration. And we're talking a slippery slope here by trying to say that we have to have some kind of force other than penetration, but what is the level of that force? Well, we've already said that. Yes, but I'm compelled to share with you one of the most memorable lessons I learned in law school. It was in criminal law, and the professor said, Mr. Gordon, why is rape a crime? And he said, well, because it's an assault on a woman. Well, what's the harm? It's something you normally do. Well, because it takes, and he blundered along, and then the professor said, Ms. Tishkoff, why is rape a crime? Well, because it's a very special thing to a woman. It's a very personal, private event, and she wants to remain special. And he said, every year I do the same thing. I ask a man why rape is a crime, and I ask a female why rape is a crime, and I always get the proper response from the female. Well, what you've got here, aside from all those niceties, is that the American Indian bill trend has set what the standard is. I mean, that's what it is. I don't agree with it particularly, but as I said, in that case. But the point is that's the law in the circuit. But when we're saying force other than the inherent penetration, then that goes into the mindset that reminded me of the law school. Why don't we get out of the air and come down to the real world, and why don't you just say why you think Belano's – I'm sorry. I'm kidding. We have too many Bs here. Judge Tashima's opinion trumps Beltran and should be followed, even though there is at least one California unpublished decision in which the statute is applied to arrive at a conviction in which there was no force. Because Belano's recognized that the standard in California is the assault, which includes the attempt to commit violent injury, and it also said, well, now that we have that, what is the level of force? Well, it doesn't have to be a violent force. If you can commit 220 on an unconscious person, the level of force would be to move the legs, to remove the pants. And it goes back to this mindset that what's the harm in rape, since it's something you do anyway? Well, you have the act of penetration with other forces. Where did you go to law school? I don't understand it's something you do anyway. Is this an unusual school? No, that if you're going to have a natural biological function, where is the harm? You mean that just rape women is enough? No, no, no, I'm saying the act of penetration. Say, well, okay, what's the big deal? And it was not saying that advocating that position was to make the point that if there's no harm in something that you do normally, what's the big deal? Well, you have the other force that helps accomplish the goal of that penetration, which is what 220 focuses on, the use of violence, fear, intimidation, assault, in order to accomplish that. Do you agree that there is a split of authority on this issue? Does government concede that? It's a close question. It's a close question, but for the case in controversy before this court, and we're discussing Penal Code 220, that the binding precedent is Bolanos, and that because it's not distinguishable because it had to do with rape. What about the waiver argument that opposing counsel raised? The government had not raised this issue. Do you agree with him about that? Yes. I did not. Because Bolanos is dispositive in my mind that it is a categorical crime of violence. It stands for the proposition that it is the accomplishment of a rape, which counsel says can be. But this wasn't raised below, right? No. May I interject here because I'm hearing an answer to a question that wasn't asked. The question is whether you waived the modified categorical approach. Let's just get a clear answer. Yes. Okay. You did not waive a categorical approach. Correct. All right. I don't understand. Where did you waive it and why? Where did you waive it? Nobody talked about this at sentencing. If you read the sentencing minutes, this was not discussed. This whole issue was not discussed. And in terms of his – the argument that's made here is two-fold with respect to the statute. One is that the assault part of the statute is not violent, and the other is that the acts that the assault was intended to further were not crimes of violence. And I don't see where in the court below the argument was made by the defendant, even in a one-half of a page of a 28-page objections, that he even argued that the assaultive part of this statute was not a violent crime. Why do you – did you really make a conscious decision to waive this or was it just that it never came up at sentencing? Nobody argued about it at sentencing. It was virtually the equivalent of a footnote in a brief that nobody ever talked about. No. At the time of sentencing, we were going with the assumption that Bolanos was controlling, which I still assert that it is, that it is dispositive in this case. The court appeared to believe – to follow along with that, and that Penal Code 220, which is the violent attempt to accomplish rape, sodomy, and oral copulation, is categorically a crime of violence. We didn't – and once the court – So if we disagree with you on it, do you think we should reverse, even though it might essentially be all harmless and even not preserved? Is that what you're saying? Well, I certainly wouldn't want you to reverse on that. And if you can – if there's something that I missed in connection with the categorical approach, you can apply that. But I – Waiver is a knowing – as I understand it, waiver is a knowing and deliberate relinquishment of a right. Did you – is that what you were doing in the district court? You were knowingly and intentionally relinquishing your right to argue that it was categorical? It wouldn't have been – Or modified categorical, I'm sorry. It wouldn't have been deliberate. It would have been acting with operating assumption that when someone assaults someone, under the definition of California assault, that that would be categorically a crime of violence. The position here is that 220 is categorically a crime of violence. And even Volanos says – recognized that prior federal law, case law, says that you look to the ordinary case rather than the theoretical possibilities. I mean, in nature's book of the infinite, there is many different permutations of how someone can violate 220. But if you take the ordinary case, it would be hard to get an example where someone, even under the categorical definition of California assault, which is the attempt to commit violent injury, would be done nonviolently. Well, this confusing – I read the California cases, and I think that it might be possible to reconcile them. But there is language in one of these cases that says the assaultive part of this two-part, two-element statute is mere touching, which I think is wrong and may even be not consistent with California law. But this is all fairly confusing. And that when it's done under California law, that mere touching, if it's used in a form of intimidation, then that should be considered a crime of violence. Volanos addressed what is force. And the removal of the pants, it even cites the cases where grabbing someone by the arm, we're going to have a slippery slope by saying, okay, well, that's not enough force. Well, how about a slap? Well, I barely even touched her. That's not really force. Volanos said that grabbing someone's arm, or the California cases said that grabbing someone's arm and leading them away, pulling the phone from the wall, that's use of force. And you don't need, as actually in this case, punching the woman in the face for it to be forcible. But if you use, if you do touching, then inherent in California Penal Code 220 is the use of some force to accomplish the goal. And if we take it to ad absurdum, say, okay, there is no force beyond the act of penetration, well, then under that extrapolation, you would have penetration by a foreign object. That would be a violation. I think you probably answered the question. Thank you. Mr. Miller, since you're coming way over for Mr. Miller, I'll give you a chance to respond. Just real quick. On the waiver issue, I don't have the exact page, but we did present that this was categorically overbroad. That was enough to present it. On page 5 of the sentence amendment. Your argument here has two aspects to it. One is that the assaultive part of the statute, because it involves the mere touching, is nonviolent. And then the object of the assault, rape, mayhem, whatever, is also not violent. And what I'm saying is that you certainly, as I read the objections below, you didn't raise the first argument that the assaultive aspect was nonviolent. Well, I believe the law in this circuit is you waive claims, not arguments. And the claim was clearly presented that this statute was overbroad. I think that's sufficient to present it. And it was understood and ruled upon at the very outset of the sentencing hearing, where the judge at page 5 of the transcript, and that is excerpt of record 9, he specifically finds that this was an aggravated felony. So that was handled, ruled upon by the court very early on. And you see that the next start is the attorney that represented Mr. Bonner. But the aggravated felony is not the magic word here. What we're talking about is a crime of violence. The aggravated felony is simply the generic phrase that described the California statute. He doesn't get to the – he gets to it at the end. It's so obvious to me from reading this transcript that this was not a sentence. What we called outside the guidelines, it was a 3553A sentence, and the guidelines had no role in this. Well, again, at page 6 – or page 10, excerpt of record, from the very beginning he said, well, the attorney that represented him at district court, well, my original recommendation was two years. Having been overruled, let me address the guideline calculations of the probation officer in the government. And the court says, they're in the middle of the range. I understand I'm not bound by the guidelines. But that's a thing. That was the starting point of the whole rest of this colloquy. Well, he's not bound by them, and you recommended when you said 24 months, he said, I can't go back from 30, which he got the last time, because it didn't do any good. So we've got to go up. And you said, okay, 48 months would be reasonable, and he gives 54. I mean, this is just – well, I've said it already. Well, yeah, six months is a difference. And if he had a lower base offense level, then we would have been discussing a different starting point from probation and the government. Okay, thank you. Counsel, the matter just argued will be submitted and will next hear argument in the United States v. Goodman. Thank you.
judges: Rymer, Smith, Korman